**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TENNESSEE**
**WESTERN DIVISION**

---

**WELLS FARGO BANK, NATIONAL ASSOCIATION, AS TRUSTEE FOR THE REGISTERED HOLDERS OF CSAIL 2019-C17 COMMERCIAL MORTGAGE TRUST, COMMERCIAL MORTGAGE PASS-THROUGH CERTIFICATES, SERIES 2019-C17,**

*Plaintiff*,

v. Case No. 2:26-cv-02264-BCL-cgc

**JAMESBRIDGE 2017 LLC, CS JAMESBRIDGE LLC, JAMESBRIDGE 5777 LLC & PINCHOS DAVID SHEMANO.**

*Defendants*.

---

**ORDER DENYING APPOINTMENT OF RECEIVER**

---

Before the Court is Plaintiff Wells Fargo, National Association's Motion to Appoint Receiver. Doc. 25. For the following reasons the Court **DENIES** the motion to appoint a receiver (Doc. 25).

**<u>BACKGROUND</u>**

This is a lawsuit based on the alleged breach of loan agreements. Doc. 1-1 at 1. The plaintiff, Wells Fargo, as trustee for the registered holders of CSAIL 2019-C17 Commercial Mortgage Trust, commercial mortgage pass-through certificates, series 2019-C17, is the lender in the underlying transaction. The Defendants are the borrowers, Jamesbridge 2017 LLC, CS Jamesbridge LLC, and Jamesbridge 5777 (collectively, "Borrowers") and Pinchos David Shemano is the guarantor (collectively, "Defendants"). Defendants removed this action from Shelby County

Chancery Court on March 12, 2026. Doc. 1.

Plaintiff and Defendants are parties to certain loan documents secured by real property—a multi-family apartment complex—located at 3815 Advantage Way Drive, Memphis, TN 38128 (the "Property"). Doc. 1-1 at 3. To purchase the Property, the Borrowers obtained a $15 million loan, secured by the Property via a Deed of Trust, Assignment of Leases and Rents, Security Agreement, and a Fixture Filing. Doc. 1-1 at 3-4. Wells Fargo claims that Borrowers have defaulted by:

a. Failing to make monthly payments owed to Lender on the Payment Dates occurring in the months of October, November, and December of 2025, and January and February, 2026. (the "Payment Default");

b. Failing to comply with covenants as contained in Sections 3.40, 4.26, and/or 4.27 of the Loan Agreement;

c. Becoming subject to liens which remained undischarged of record for more than thirty days; and

d. Failing to operate and maintain the Property in good and safe condition and repair as provided in Section 4.3 of the Loan Agreement, all of which constitutes an Event of Default as provided in Sections 10.1 of the Loan Agreement.

*Id.* at 6-7; *see also* Doc. 1-4 (photos of disrepair); Doc. 1-5 (Inspection Report showing disrepair on Property, with pictures).

Wells Fargo claims there is significant risk to the property. Specifically, Plaintiff claims that Borrowers have allowed the property to deteriorate in condition to a state of disrepair, "including an entire building that is uninhabitable due to fire damages." Doc. 1-1 at 11. On February 4, 2026, Wells Fargo notified the Borrowers that it was accelerating the Loan, demanding payment of the full balance. *Id*. at 7. Wells Fargo seeks the appointment of a receiver to "preserve and protect the Lender's security interests in the Property." *Id.* at 10.

**JURISDICTION**

It is commonly known that "[f]ederal courts are all of limited jurisdiction." *Hain Celestial Grp., Inc. v. Palmquist*, 146 S. Ct. 724, 730 (2026) (quotation marks and citation omitted). As the removing parties, Defendants in this case rest their claim to jurisdiction on diversity jurisdiction, which requires that "the matter in controversy exceed[ ] the sum or value of $75,000, exclusive of interests and costs" and, as relevant here that the case "is between citizens of different States." 28 U.S.C. § 1332(a). Given the size of the loan and value of the Property, there is no dispute that the amount in controversy requirement is satisfied. The question is whether the suit is between citizens of different States—which requires so-called "complete diversity," meaning no plaintiff shares state citizenship with any defendant. *See U.S. Motors v. General Motors, Europe*, 551 F.3d 420, 423 (2008).

Here, the analysis is complicated somewhat by the various capacities and forms the parties occupy. Consider first Plaintiff Wells Fargo Bank, N.A. As noted above, Wells Fargo is suing "as trustee for the registered holders of CSAIL 2019-C17 Commercial Mortgage Trust, commercial mortgage pass-through certificates, series 2019-C17." Doc. 1-1 at 1. So, do we look to Wells Fargo's citizenship, the citizenship of the trust itself, the citizenship of the beneficiaries of the trust, all or some combination of the above, or something else?

Settled law provides an answer: When determining the citizenship of a trust for purposes of diversity jurisdiction, it is the citizenship of the trustee that counts, at least where, as here, the trustee has actual and substantial control over the trust property. *See Navarro Sav. Ass'n v. Lee*, 446 U.S. 458, 462-64 (1980) (so holding, and tracing decisions back through the nineteenth century); *accord Homfeld II, L.L.C. v. Comair Holdings, Inc.*, 53 F. App'x 731, 732 (6th Cir. 2002). *Americold Realty Trust v. Conagra Foods, Inc.*, 577 U.S. 378 (2016), is not to the contrary. Rather,

*Americold* reaffirmed the traditional rule, *id.* at 382–83, while noting that a different rule can apply where a state creates an entity called a "trust", but which nevertheless operates like an unincorporated association, and that entity then litigates in its own name—in which case the different rules applicable to unincorporated associations will apply. *Id.* at 382. That is not the case here, which means *Americold* has no application. So, we look to the traditional rule, which in turn looks to the citizenship of Wells Fargo Bank National Association because it is the trustee.

Congress has by statute provided that a national banking association like Wells Fargo is a citizen of the State in which it is located—meaning where it has its main office, as set forth in its articles of association. *See* 28 U.S.C. § 1348 ("All national banking associations shall, for the purposes of all other actions by or against them, be deemed citizens of the States in which they are respectively located."); *Wachovia Bank v. Schmidt*, 546 U.S. 303, 307 (2006) ("[W]e hold that a national bank, for § 1348 purposes, is a citizen of the State in which its main office, as set forth in its articles of association, is located."). For Wells Fargo, that is South Dakota. *See* Defendant Wells Fargo Bank Notice of Removal in *Valencia Chavez v. Wells Fargo Bank, N.A*., 3:25-cv-10600, at 2025 WL 3776022.

No Defendant is a citizen of South Dakota. As unincorporated entities, the three defendants have the citizenship of their members (and of their members' members, etc., until the trail stops). *See Americold*, 577 U.S. at 381. Here that breaks down as follows: Defendant Pinchos David Shemano—New York; Defendant Jamesbridge 2017 LLC—New York, New Jersey; CS Jamesbridge LLC—New York, New Jersey; Jamesbridge 5777 LLC—New York, New Jersey, and Ohio. Doc. 14 at 1-2.

Complete diversity therefore exists and, with the amount in controversy requirement satisfied, this Court has jurisdiction over the dispute.

## ANALYSIS

### I. Standards for appointment of a receiver.

Federal Rule of Civil Procedure 66 authorizes a court to appoint a receiver. *See PNC Bank, Nat. Ass'n v. Goyette Mech. Co.*, 15 F. Supp. 3d 754, 758 (E.D. Mich. 2014). The parties do not contest that federal law controls the appointment of a receiver. Docs. 25 at 8, 30 at 9. "A district court enjoys broad equitable powers to appoint a receiver over assets disputed in litigation before the court. The receiver's role, and the district court's purpose in the appointment, is to safeguard the disputed assets, administer the property as suitable, and to assist the district court in achieving a final, equitable distribution of the assets if necessary." *Liberte Cap. Grp., LLC v. Capwill*, 462 F.3d 543, 551 (6th Cir. 2006). Even acknowledging the Court's broad power to appoint over receiverships, a receivership "is 'an extraordinary remedy that is only justified in extreme situations." *De Boer Structures (U.S.A.), Inc. v. Shaffer Tent & Awning Co.*, 187 F. Supp. 2d 910, 925 (E.D. Ohio 2001).

The Court considers the following non-exclusive factors when determining whether to appoint a receiver:

> (1) the adequacy of the security; (2) the financial position of the borrower; (3) any fraudulent conduct on the defendant's part; (4) imminent danger of the property being lost, concealed, injured, diminished in value, or squandered; (5) inadequacy of legal remedies; (6) the probability that harm to the plaintiff by denial of appointment would outweigh injury to parties opposing appointment; (7) the plaintiff's probable success in the action and the possibility of irreparable injury to the plaintiff's interest in the property; and (8) whether the plaintiff's interests sought to be protected will in fact be well-served by a receivership.

*PNC Bank*, 15 F. Supp. 3d at 758. Courts have found that "the two most important factors … [are] adequacy of the security and financial condition of the borrower." *Federal Nat'l Mortgage Ass'n v. Mapletree*, 2010 WL 1753112, at *4 (E.D. Mich. 2010). "Moreover, the parties' advance consent to the appointment of a receive[r] is a strong factor weighing in favor of appointing one," even if

the parties' agreement cannot dictate the Court's exercise of its authority in equity. *PNC Bank*, 15 F. Supp. 3d at 758; *see New York Life Ins. Co. v. Watt W. Inv. Corp.*, 755 F. Supp. 287, 292 (E.D. Cal. 1991) ("[S]urely the fact that the parties agreed to the appointment of a receiver in the deed of trust is entitled to great weight as the court exercises its discretion").

**II. The relevant factors do not support appointment of a receiver.**

The Court now turns to reviewing the relevant factors in light of the record in this case. Some of them do weigh in favor of imposing a receiver. For example, the Parties did contractually agree to appointment of a receiver, which—while it does not dictate the outcome—could tip the scales in a close case. *See New York*, 755 F. Supp. at 292. And the eighth factor supports appointment of a receiver (as it seemingly always will in any non-frivolous motion) because appointment of a receiver will secure the property and thus Plaintiff's interest in it. And the first component of the seventh factor—Plaintiff's probable success on the merits—also supports appointment of a receiver because, on this preliminary record, Plaintiff's claims that Defendants are in default stand essentially unrebutted.

But other factors—and the overall weight of the factors—weigh against appointing a receiver at this time.

Consider first the second (financial position of the borrower) and fifth (adequacy of legal remedies) factors, both of which here boil down to whether Defendants can pay off the loan or pay a judgment. The undisputed evidence is that Defendants can do so, as Defendants' declarations indicate that they stand ready, willing, and able to make "monthly debt service obligations necessary to bring the loan current" and have actually "sought to bring the loan current" with a lump sum payment only to be met with Plaintiff's refusal "to accept less than the entire loan balance" due to acceleration. Doc. 31 at 3. Plaintiff may be within its rights to refuse to accept

those payments—whether that is so can await resolution on the merits—but these facts indicate that Defendants are in a solid financial condition and that legal remedies would be adequate. If confirmation is needed, it can be found in Defendants' plan—declared under penalty of perjury—to pour more money into the Property, which of course indicates that Defendants have the money to pour. Moreover, there is no suggestion of fraudulent conduct on Defendants' part, which means the third factor likewise weighs against appointment of a receiver.

Still, the security—here, the Property—was part of the Parties' bargain and so one must consider Defendants' actions concerning the Property. Logically, those circumstances are of less concern if, as the Court has already concluded, the record currently shows Defendants are in a good financial condition and not engaged in fraudulent conduct, with the result that legal remedies would be adequate. But, putting that aside, concern about or relating to the collateral does not support appointment of a receiver at this time. Nothing in the record suggests that the collateral is inadequate in and of itself, so the first factor does not support appointment of a receiver.

Turning to the fourth factor, the first part of the sixth factor (probability of harm to the plaintiff by denial of appointment) and the second part of the seventh factor (possibility of irreparable injury to the plaintiff's interest in the property), Plaintiff has identified two threats to the Property or its value: (1) imposition of liens on the Property; and (2) allowance of disrepair on the Property. Doc. 1-1 at 6-7; *see also* Doc. 1-4 (photos of disrepair); Doc. 1-5 (Inspection Report showing disrepair on Property, with pictures). Standing alone, this probably would justify appointment of a receiver, but the undisputed evidence shows that Defendants are in the process of resolving both threats to the Property:

1. Plaintiff has not provided any specific information concerning the identity and magnitude of the liens, but in any event undisputed evidence shows that Defendants

and their new third-party property manager have been "work[ing] to resolve any and all lien claims," with "the financial wherewithal to bring current any outstanding payments." Doc. 31 at 2; *id.* at 3 ("Owner has resolved or is prepared to resolve any liens recorded against the Property.").

2. While Plaintiff has provided documented evidence of disrepair on the Property, Defendants have provided undisputed evidence that they have "infused more than $75,000.00 of new capital to address deferred maintenance issues and certain other concerns raised by Wells Fargo" and that they have the financial wherewithal to … timely complete the capital improvement project … by January 2027 at a cost of $2.45 ML." Doc. 31 at 2-3; Doc. 32 at 2.

Moreover, it is worth noting that while Wells Fargo makes much of the existence of a burned-out building on the Property, the undisputed evidence is that Plaintiff has, yet refused to release, "insurance proceeds totaling $2,000,000.00 which is sufficient to repair" that building. Doc. 31 at 2. This consideration likewise weighs against—or, more accurately, neutralizes the burned-out building as a factor supporting—appointment of a receiver because, absent further information or explanation, a party should not be permitted to bootstrap its way into a receiver by withholding funds insurance proceeds.[1]

The upshot is that, as the record now stands, Defendants are financially stable and any threat to the Property has been or is in the process of being mitigated. And this means the sixth factor also weighs against appointment of a receiver because the disruption to Defendants'

[1] Plaintiff has not done anything to explain the nature of the PILOT Program and its relevance to this Motion for a Receiver, except insofar as failure to comply with conditions of that Program apparently is in Plaintiff's view a default under the loan and associated agreements. The PILOT program thus does not bear weight in the Court's analysis. That said, the Court notes that the undisputed evidence is that Defendants are, with approval of the PILOT Board, likewise coming into compliance with that program. Doc. 31 at 3-4; Doc. 32 at 2-3.

business and interest in the Property upon appointment of the receiver outweighs, on this record, the probable harm to Plaintiff from refusal to appoint a receiver. Plaintiff is free to file a new motion for a receiver if new developments occur or if, after an appreciable period of time, Defendants' efforts to resolve threats to and conditions on the Property either are not working or are not being followed through. But right now, the record does not support appointment of a receiver.

## CONCLUSION

For the foregoing reasons, Plaintiff's Motion to appoint a Receiver (Doc. 25) is **DENIED**.

.

**IT IS SO ORDERED**, this 19th day of June, 2026.

s/ *Brian C. Lea*
BRIAN C. LEA
UNITED STATES DISTRICT JUDGE